1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

HARBANS SINGH,

7                              Petitioner,

8          v.

9  UNITED STATES IMMIGRATION AND
   CUSTOMS ENFORCEMENT, et al.,

10                             Respondent.

Case No. 2:22-cv-00548-BHS-TLF

AMENDED REPORT AND
RECOMMENDATION

Noted for <u>April 7, 2023</u>

11

12        Petitioner Harbans Singh, who is currently detained by U.S. Immigration and

13  Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in

14  Tacoma, Washington and is represented by counsel, brings this 28 U.S.C. § 2241

15  habeas action seeking: immediate release from detention, or a bond hearing. Dkt. 4 at

16  5, 14. The Court previously issued a Report and Recommendation in this matter after

17  considering the § 2241 petition, the Government's return memorandum and motion to

18  dismiss, together with accompanying declarations and exhibits, as well as petitioner's

19  response to the Government's memorandum, the balance of the record, and the then-

20  governing law (Dkts. 8, 9, 10, 11).[1] Dkt. 13. The Court recommended that the petition be

21  granted in part, and denied in part. *Id.*

22

23  [1] On October 26, 2022, petitioner submitted a "notice" attaching a doctor's letter regarding increases in petitioner's blood pressure and blood sugar levels since his confinement. The Court did not consider this late-filed submission and, in any event, does not find the information to be material to the applicable legal analysis.

24

25

AMENDED REPORT AND RECOMMENDATION - 1

On December 12, 2022, the District Court, the Honorable Benjamin H Settle, re-referred this matter to the undersigned to address the impact upon this case of new Ninth Circuit authority—*Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Dkt. 19. The parties have filed supplemental briefing regarding the impact *Rodriguez Diaz* and the Court heard oral argument. Dkt. 21. The Court has considered the parties' supplemental submissions (Dkts. 23, 24, 25) and oral argument held on February 22, 2023 and now issues this Amended Report and Recommendation.

The Court continues to recommend that petitioner be found subject to mandatory detention under 8 U.S.C. § 1226(c) and not statutorily entitled to a bond hearing or to release from detention. In light of *Rodriguez Diaz* and the process already received by petitioner, the Court concludes that petitioner's detention does not violate the requirements of due process and he is not entitled to an additional bond hearing on constitutional grounds.

Therefore, petitioner's habeas petition should be DENIED, respondent's motion to dismiss should be GRANTED, and this matter should be DISMISSED with prejudice.

**BACKGROUND**

**A.      Petitioner's United Kingdom Arrests, *in absentia* Convictions and Entry into the United States**

Petitioner is a 38-year-old native and citizen of India; he lived in the United Kingdom—in England—immediately before he entered the United States. Dkt. 10 (Declaration of Mihaela Hammer) at ¶ 3; Dkt. 9-1 (Ex. A to Declaration of Robert K. Lundberg) at 2. Petitioner entered the United States on or about January 22, 2015 at New York, New York, as a nonimmigrant visitor. Dkt. 10 (Hammer Dec.) at ¶ 4. Petitioner obtained his visa permitting him to remain in the United States until July 21,

2015, after completing an application in which he denied, under penalty of perjury, having been arrested. *Id*.

Just weeks before his November 24, 2014 visa application, petitioner actually had been arrested on two occasions in the United Kingdom—on November 5 and November 18, 2014. *Id*. at ¶ 3. He was charged with one count of sexual assault of a female and two counts of sexual assault of a female child under 13 years of age. *Id*. Petitioner left the United Kingdom before his trial and was convicted *in absentia* on all charges on May 8, 2015 (the "UK convictions"). *Id*. at ¶ 5; Dkt. 9-2 (Ex. B to Lundberg Dec.) at 2–3. On May 15, 2015, petitioner was sentenced (also *in absentia*) to one year's imprisonment on all offenses, to be served concurrently. Dkt. 9-2 at 2.

On July 20, 2015, petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture with the U.S. Citizenship and Immigration Service ("USCIS"). Dkt. 10 (Hammer Dec.) at ¶ 6. Petitioner's sworn testimony in support of his applications denied any prior arrests. *Id*. at ¶ 7. On May 31, 2019, USCIS declined to grant petitioner's applications and referred him for removal proceedings before the immigration court. *Id*. at ¶ 8.

On June 14, 2019, the Department of Homeland Security ("DHS") served petitioner a Notice to Appear ("NTA"), charging him as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for a time longer than permitted after entering as a nonimmigrant visitor; the NTA was filed with the immigration court on July 17, 2019. Dkt. 9-4 (Ex. D to Lundberg Dec.); Dkt. 10 (Hammer Dec.) at ¶ 9. Petitioner, through counsel, conceded the charges in the NTA and sought asylum and related protections. Dkt. 10 (Hammer Dec.) at ¶ 10.

1

2

## B.    Petitioner's United States Criminal Indictment, Detention and Requests for Release on Bond

3

On July 22, 2020, while his removal proceedings remained pending, petitioner

4

was indicted in the United States District Court for the Western District of Washington

5

and taken into criminal custody. Dkt. 10 (Hammer Dec.) at ¶ 11; Dkt. 9-1 (Ex. 1 to

6

Lundberg Dec.) at 3. Petitioner was charged with two counts of violating 18 U.S.C. §

7

1546(a) (fraud and misuse of visas) and two counts of violating 18 U.S.C. § 1001(a)

8

(false or fraudulent statement). Dkt. 9-5 (Ex. E to Lundberg Dec.).

9

On July 30, 2020, petitioner was released from criminal custody on a bond; and

10

then he was detained by ICE at NWIPC. Dkt. 10 (Hammer Dec.) at ¶ 12; Dkt. 9-1 (Ex. A

11

to Lundberg Dec.) at 3–4; Dkt. 9-6 (Ex. F to Lundberg Dec.). Petitioner has remained

12

under ICE detention since that time, except for the five-month period between July 12,

13

2021 and December 13, 2021, when he was transferred to federal criminal custody in

14

connection with his criminal prosecution. Dkt. 10 (Hammer Dec.) at ¶¶ 17, 20.

15

Prior to his U.S. criminal proceeding, petitioner requested and received a custody

16

redetermination hearing from the Immigration Judge ("IJ"), which was held on

17

September 30, 2020 and at which he was represented by counsel and presented

18

briefing and evidence. Dkt. 10 (Hammer Dec.) at ¶ 13; Dkt. 9-7 (Ex. G to Lundberg

19

Declaration; Dkt. 24-5 (Ex. E to Lundberg Dec.). The IJ denied petitioner's request for

20

bond in a written memorandum issued on November 3, 2020. Dkt. 9-9 (Ex. I to

21

Lundberg Dec.). The IJ determined petitioner was convicted *in absentia* in the UK

22

because he had failed to appear for his court proceeding in England and instead fled to

23

the United States. *Id*. at 4.

24

After evaluating the elements of the offenses of conviction, the IJ concluded they

25

constituted crimes involving moral turpitude within the meaning of 8 U.S.C. § 1226(c),

requiring petitioner's mandatory detention. *Id*. The IJ found that *in absentia* convictions

could properly be relied upon for immigration purposes. *Id*. (citing *Ahmed v. Gonzales*,

221 F.App'x. 595 (9th Cir. 2007)).

In the alternative, the IJ also found petitioner had failed to show he was not a

danger or a flight risk, noting that although represented by counsel in England,

petitioner "apparently came to the United States to avoid prosecution for a very serious

offense." Dkt. 9-9 (Ex. I to Lundberg Dec.). at 5. The IJ concluded, "the serious nature of

the charges in England and respondent's efforts to evade prosecution demonstrates

that he is a danger and a flight risk." *Id*.

Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"),

which dismissed the appeal in a written opinion on May 17, 2021. Dkt. 9-12 (Ex. L to

Lundberg Dec.). Applying the categorical approach, the BIA concluded the UK

convictions constituted crimes involving moral turpitude. *Id*. at 6. The BIA also affirmed

the IJ's alternative finding that petitioner had not met his burden to establish he was not

a danger or a flight risk, in light of the seriousness of the offenses and the fact that

petitioner had fled prosecution. *Id*. at 6–7.

Petitioner made two additional motions seeking release on bond, on May 26,

2021 and on February 10, 2022. Dkt. 10 (Hammer Dec.) at ¶¶ 16, 22. On both

occasions, the IJ found there was no jurisdiction because petitioner was subject to

mandatory detention. Dkts. 9-14 (Ex. N to Lundberg Dec.), 9-18 (Ex. R to Lundberg

Dec.). With respect to the second motion, petitioner argued materially changed

circumstances were presented by an intervening psychosexual examination concluding

petitioner "does not appear to be a sexual predator" and by petitioner's status as a derivative family member on his wife's asylum application. Dkt. 9-17 (Ex. Q to Lundberg Dec.) at 7–8. The IJ rejected petitioner's arguments, finding that there had been no material change in circumstances since the court's prior determination. Dkt. 9-18 (Ex. R to Lundberg Dec.).

Petitioner also received reviews of his custody on December 3, 2020, March 12, 2021 and December 14, 2021 in light of his COVID-19 risk factors, in which it was determined he should remain in custody due to a threat to public safety. Dkts. 24-1, 24-2 (Exs. A and B to Second Lundberg Dec.); Dkt. 9-16 (Ex. P to Lundberg Dec.). On May 3, 2022 petitioner received a file custody review for which he was permitted to submit information; the review concluded petitioner had not demonstrated he would not be a safety risk or a danger to the community, and that ICE would be able to effectuate his removal once it became final; petitioner's detention was therefore continued. Dkts. 24-3, 24-4 (Exs. C and D to Second Lundberg Dec.).

**C.    Petitioner's United States Criminal Conviction and Sentence**

A jury found petitioner guilty of counts 1, 2 and 4 of the indictment against him. Dkt. 9-15, Judgment, U.S. District Court for the Western District of Washington, No. 2:20-cr-00085-RAJ-1 (Ex. O to Lundberg Dec.) (the "U.S. convictions"). On December 10, 2021, the Hon. Richard Jones entered judgment finding petitioner guilty of violating 18 U.S.C. § 1546(a) and 2, by making a false statement on a visa application, and by possession and use of an immigration document procured by fraud in his asylum application; and of violating 18 U.S.C. § 1001(a)(2) by making a false statement in his asylum interview. *Id.* at 2. Petitioner was sentenced to time served—comprising the five months he was detained in criminal custody in connection with his trial. *Id.*; Dkt. 10

1    (Hammer Dec.) at ¶¶ 17, 20.

2         The Ninth Circuit Court of Appeals affirmed the convictions on December 19,

3    2022 and denied petitioner's request for rehearing *en banc*; the Ninth Circuit issued its

4    mandate on February 24, 2023. *See United States v. Singh*, No. 21-30267 (9th Cir.), at

5    Dkts. 47, 51, 52.

6    **D.    Petitioner's Immigration Proceeding**

7         The IJ held evidentiary hearings on the merits of petitioner's applications for

8    asylum and other protection from deportation on January 21, 2021 and March 23, 2021.

9    Dkt. 10 (Hammer Dec.) at ¶ 14.

10        On April 28, 2021, the IJ denied petitioner's applications and ordered him

11   removed to India. *Id*. at ¶ 15. The IJ found petitioner did not testify credibly, had failed to

12   meet his burden of proof, and that the serious nonpolitical crime bar applied—based

13   upon his *in absentia* UK convictions for sexual assault—which rendered petitioner

14   ineligible for asylum and withholding of removal. *Id*. Petitioner appealed the denial to the

15   BIA. *Id*.

16        On September 29, 2021, the BIA issued a decision dismissing petitioner's appeal

17   and upholding the IJ's order denying his requests for asylum and related protection. *Id*.

18   at ¶ 18. On October 4, 2021, petitioner filed a petition for review with the Ninth Circuit

19   Court of Appeals. *Id*. at ¶ 21; *Singh v. Garland*, No. 21-859 (9th Cir.). Petitioner moved

20   for a stay of removal, which the Government opposed. Dkts. 3, 12. The Ninth Circuit has

21   not yet ruled on the motion—but removal is currently stayed pending further order of the

22   Court. *Id*. at Dkt. 3. The appeal has now been fully briefed; however, it has been

23   consolidated with an additional subsequently filed appeal by petitioner. *Id*. at Dkts. 35,

24   38, 41.

25

**E.      Petitioner's Federal Habeas Proceeding**

Petitioner filed this action on April 24, 2022. Dkt. 1. His original petition contends: (1) petitioner is detained pursuant to 8 U.S.C. § 1226(a) ("subsection (a)") (providing for discretionary detention), and not 8 U.S.C. § 1226(c) ("subsection (c)") (requiring mandatory detention); (2) he is entitled to immediate release or a bond hearing pursuant to subsection (a); and (3) his detention violates his constitutional right to due process under the Fifth Amendment. Dkt. 4 at 8–10. However, petitioner now appears to argue that he is detained pursuant subsection (c)—and appears to have abandoned his original claim that his detention is governed by subsection (a). Dkt. 20 at 2; Dkt. 24 at 4–5.

Respondent contends that petitioner is detained pursuant to subsection (c) and therefore subject to mandatory detention, but argues that petitioner has nonetheless received the bond hearings and process that would be available to detainees under subsection (a). Dkt. 8 at 10,  Dkt. 23 at 3–5. Respondent further contends that the procedures already afforded petitioner are sufficient to comply with due process. Dkt. 8 at 10–18, Dkt. 23 at 4–9.

## DISCUSSION

**A.      Statutory Basis for Petitioner's Detention**

Petitioner's initial petition asserts he is detained pursuant to subsection (a) of 8 U.S.C. § 1226, under which detention is discretionary. Dkt. 4 at 8. The Government contends petitioner's detention is instead governed by subsection (c), pursuant to which detention is mandatory—and it appears petitioner may now agree. Dkt. 8 at 1; Dkt. 20 at 2; Dkt. 25 at 3–4. The Court agrees that petitioner's detention is governed by the mandatory detention requirement of subsection (c).

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are present in the United States and have been placed in removal proceedings.[2] *Avilez v. Garland,* 48 F.4th 915, 919–920 (9th Cir. 2022).

Subsection (a) authorizes DHS to arrest and either detain, or release on bond, noncitizens "pending removal proceedings," except as provided in subsection (c). 8 U.S.C. § 1226(a); *Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 846–48 (2018). When a noncitizen is arrested and taken into immigration custody pursuant to subsection (a), ICE makes an initial custody determination, including bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

Subsection (c), in contrast, states that DHS "'*shall* take into custody any [noncitizen]' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S.Ct. at 846 (quoting § 1226(c)(1)) (emphasis added). DHS "may release" such a noncitizen "*only if*" DHS decides that doing so is necessary for witness-protection purposes and the noncitizen will not pose a danger or flight risk. *Id.* (quoting § 1226(c)(2), emphasis in *Jennings*). Thus, detention of noncitizens falling under subsection (c) is (outside of the narrow exception for witness

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1    protection) mandatory. *Avilez,* 48 F.4th at 920. "Subsection C applies throughout the

2    administrative and judicial phases of removal proceedings . . .." *Id.* at 925. This means

3    that individuals who are detained under subsection (c) "are not statutorily eligible for

4    release on bond during the judicial phase of the proceedings, except under the narrow

5    circumstances defined by § 1226(c)(2)." *Id.*

6        Among the enumerated categories of crimes for which Section 1226(c) requires

7    mandatory detention are convictions of multiple "crimes involving moral turpitude," and

8    "aggravated felonies" that would render a noncitizen deportable. 8 U.S.C. §

9    1226(c)(1)(B) (referencing 8 U.S.C. § 1227(a)(2)(A)(ii) (multiple crimes involving moral

10    turpitude) and 8 U.S.C. § 1227(a)(2)(iii) (aggravated felonies)).

11        Here, the IJ found that petitioner's two *in absentia* UK convictions constituted

12    crimes involving moral turpitude -- convictions for sexual assault of a minor. Dkt. 9-9 at

13    4. The Board of Immigration Appeals ("BIA") affirmed. Dkt. 9-12 at 6.[3]

14        Petitioner's 2021 U.S. conviction of immigration document fraud and perjury also

15    places him under Section 1226(c)'s mandatory detention requirement. Dkt. 9-15,

16    Judgment, U.S. District Court for the Western District of Washington, No. 2:20-cr-

17    00085-RAJ-1 (Ex. O to Lundberg Dec.) The convictions qualify as crimes involving

18    moral turpitude. *See Planes v. Holder,* 652 F.3d 991, 997-98 (9th Cir. 2011) (noting "the

19

20    _____

21    [3] In their initial briefing, the parties disagreed whether petitioner's *in absentia* convictions subject him to mandatory detention. Petitioner cited 22 C.F.R. § 40.21(a)(4), which excludes *in absentia* convictions from the statutory provision rendering a non-citizen inadmissible for crimes of moral turpitude—8 U.S.C. § 1182(a)(2). The Government contended the regulation did not apply here, where a different statute is at issue—8 U.S.C. § 1227(a)(2), which renders noncitizens deportable for crimes involving moral turpitude. The Government also cited *Ahmed*, 221 F.App'x. 595, which upheld the IJ's reliance on an *in absentia* terrorism conviction to deny an asylum claim. The Court need not resolve this issue, because—as discussed above-- petitioner's 2021 U.S. conviction of immigration document fraud and perjury also places him under Section 1226(c)'s mandatory detention requirement.

22

23

24

25

1   longstanding rule that crimes that have fraud as an element … are categorically

2   involving moral turpitude"); *U.S. ex rel. Majka v. Palmer*, 67 F.2d 146 (7th Cir. 1933)

3   (false statement made under oath to consular official was a crime involving moral

4   turpitude).[4]

5        Petitioner is therefore subject to subsection (c), which imposes mandatory

6   detention with no right to a bond hearing.[5] The Court should hold that petitioner's

7   detention is statutorily authorized and, accordingly, his request for release from

8   detention should be denied.

9        However, even if the detention is statutorily authorized, the Court must determine

10  whether it comports with due process.

11  **B.    Due Process**

12       An IJ has already reviewed petitioner's detention and petitioner now seeks a new

13  bond hearing; for the reasons discussed below, the Court should therefore apply the

14  balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether the

15  procedures provided are constitutionally sufficient.[6] *Mathews* requires courts to consider

16

17  [4] Petitioner's initial briefing argued that the convictions were not final because his appeal remained
    pending. Dkt. 4 at 11. The Ninth Circuit has now affirmed the convictions, denied rehearing and issued its
    mandate. *See United States v. Singh*, No. 21-30267 (9th Cir.), at Dkts. 47, 51, 52.

18  [5] The Court notes that even if petitioner could be deemed to be detained under subsection (a), he has
    already received a bond hearing meeting that subsection's requirements. Dkt. 9-9, (Ex. I to Lundberg
19  Dec.) at 4–5. Pursuant to *Jennings*, Section 1226(a) does not require more. 138 S.Ct. at 847. Therefore,
    even if petitioner were deemed to be detained pursuant to subsection (a), his detention would comply with
20  the statute.

21  [6] In this District, judges generally have declined to apply *Mathews* when—unlike here— a noncitizen who
    is subject to prolonged mandatory detention has never had a bond hearing, instead favoring a multi-factor
    test adopted by a majority of district courts around the country. *See, e.g.*, *Banda v. McAleenan*, 385
22  F.Supp.3d 1099, 1106-07 (W.D. Wash. 2019) (addressing mandatory detention under § 1225(b)(1));
    *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *6-9, *8 n.8 (W.D. Wash. May 23, 2019), *R & R*
23  *adopted*, 2019 WL 596285 (W.D. Wash. Nov. 13, 2019) (addressing mandatory detention under §
    1226(c)). For Section 1226(c) detainees, those factors are: (1) the total length of detention to date; (2) the
24  likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in
    prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5)

25

1    three distinct factors: (1) the private interest at stake; (2) the government's interest,

2    including the function involved and the fiscal and administrative burdens that any

3    additional procedural requirements would entail; and (3) the risk of an erroneous

4    deprivation of the private interest at stake through the procedures used, and the

5    probable value, if any, of additional procedural safeguards. 424 U.S. at 335.

6           Even if statutorily authorized, detention may still violate due process if it becomes

7    excessively prolonged. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court

8    rejected a due process challenge to subsection (c). The Supreme Court explained that

9    Congress drafted subsection (c) to respond to the high rates of crime and flight by

10   removable noncitizens convicted of certain crimes and held that "the Government may

11   constitutionally detain deportable [noncitizens] during the limited period necessary for

12   their removal proceedings." *Id.* at 518–21, 526. In so holding, the Supreme Court

13   stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a

14   definite termination point" that, in the vast majority of cases, results in detention of less

15   than about five months. *Id.* at 529–30. The Court reasoned that under the Due Process

16   Clause, a noncitizen could be entitled to "an individualized determination as to his risk of

17   flight and dangerousness if the continued detention became unreasonable or

18   unjustified." *Id.* at 532 (Kennedy, J., concurring and writing for the majority on this point).

19          Yet the Court in *Demore* did not determine whether bond hearings would be

20   constitutionality required in a case of prolonged, mandatory detention. Nor did the

21   Court's decision in *Jennings* resolve whether a bond hearing would be constitutionally

22

23   the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in
     the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings
     will result in a final order of removal. *Martinez*, 2019 WL 5968089, at *9. The Government contends that it
24   should prevail under both *Mathews* and the multi-factor *Martinez* test. Dkt. 8 at 15–18.

25

AMENDED REPORT AND RECOMMENDATION - 12

required. The Court remanded to the Ninth Circuit (138 S.Ct. at 851–52); the Ninth

Circuit did not issue a holding on whether a hearing would be constitutionally required,

and remanded to the district court. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252,

255–256 (9th Cir. 2018). The Ninth Circuit has declined to "take [any] position on [the]

question" whether due process requires a bond hearing for Section 1226(c) detainees.

*Martinez v. Clark,* 36 F.4th 1219, 1223 (9th Cir. 2022).

### 1.    Applicable Test

The Government contends that, rather than applying a multi-factor or balancing

test, the Court should simply focus on *Demore*'s emphasis on the government's

interests. Dkt. 23 at 9 n.5. But *Demore* acknowledges that if detention were to be

delayed past the limited period contemplated by the Court and to become

"unreasonable or unjustified," a detainee "could be entitled" to an individualized

determination of danger and flight risk. *Demore*, 538 U.S. at 532 (Kennedy, J.,

dissenting). *Demore* does not, however, provide guidance or supply a test to measure

when detention reaches this tipping point.

The Ninth Circuit in *Rodriguez Diaz* rejected the argument the Government

asserts here and—noting that other courts have regularly applied the *Mathews* test

when evaluating due process challenges to immigration detention—observed that

*Mathews* "remains a flexible test that can and must account for the heightened

governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F. 4th

at 1206–07. The court  therefore assumed—without deciding—that *Mathews* applied. *Id*.

[7]

---

[7]  Petitioner, in his initial petition, appeared to argue for a bright line requirement that bond hearings be provided every six months, as imposed by former Ninth Circuit law. Dkt. 4 at 11–12, citing *Rodriguez v.*

In this District, courts have applied the multi-factor *Banda* test where (unlike this case) a petitioner has not had a prior bond hearing. But where a petitioner has already had a hearing, courts in this District have applied the *Mathews* test to determine whether an additional bond hearing is required. *See, e.g.*, *Viramontes-Gomez v. Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018), *R. & R. adopted*, 2018 WL 6107293 (W.D. Wash. Nov. 21, 2018). Because petitioner here has already received a bond hearing, the Court should apply the *Mathews* test.

The question before the Court is whether petitioner's prior bond hearing was sufficient to satisfy the due process requirements for prolonged, pre-removal order detention; the Court is not considering prolonged detention that has never been reviewed by an IJ. As the Court in *Banda* explained, "Courts apply the *Mathews* test to resolve the question of 'whether the administrative procedures provided . . . are constitutionally sufficient.' Thus, the *Mathews* test balances the benefits or burdens of 'additional or substitute procedural safeguards.'" 385 F.Supp.3d at 1006 (quoting *Mathews*, 424 U.S. at 334–35, internal citation omitted). This is the task before the Court in this case.

## 2.    Applying the *Matthews* Test

This Court's previous R&R concluded that under the *Mathews* balancing test, a second bond hearing was required to satisfy due process. Dkt. 13 at 14–17. This conclusion was primarily driven by the Court's understanding—consistent with the decisions of other courts in this District—that under *Singh v. Holder*, 638 F.3d 1196,

---

*Robbins*, 804 F. 3d 1060 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 846–48 (2018). But *Rodriguez III* was overruled by the Supreme Court in *Jennings* and the Court is aware of no courts in this Circuit that continue to apply the bright-line test. Petitioner's supplemental briefing appears instead to argue for the application of the *Mathews* test. Dkt. 25 at 6.

1208 (9th Cir. 2011), due process required a bond hearing at which the Government

bore the burden of proving petitioner's danger and flight risk by clear and convincing

evidence. Dkt. 13 at 16. Because petitioner's prior bond hearing had, instead, placed

the burden on petitioner, the Court concluded due process required a second hearing

that complied with *Singh. Id*. at 16–17.

　　After the R&R was issued, the Ninth Circuit Court of Appeals decided *Rodriguez*

*Diaz*, 53 F. 4th 1189; in that case, the Court held that *Singh*, which arose out of a line of

Ninth Circuit cases that had been "substantially upend[ed]" by recent Supreme Court

authority, did not "establish a freestanding set of constitutionally mandated procedures

that would apply to any detained alien." *Rodriguez Diaz*, 53 F.4th at 1196, 1200.

Instead, the Ninth Circuit in *Rodriguez Diaz*, applied the *Mathews* test, the "extensive"

procedural protections provided to the petitioner under subsection (a) were sufficient to

meet due process requirements—and the Due Process clause did not require a second

bond hearing with the burden of proof shifted to the Government. *Id*., 53 F.4th at

1202,1203.

　　The undersigned requested additional briefing and argument from the parties

regarding the impact, if any, of *Rodriguez Diaz* on this case. Petitioner contends

*Rodriguez Diaz* does not apply, because it is limited to detention under subsection (a)

and petitioner here is detained pursuant to subsection (c). Dkt. 25 at 3–4. Respondent

argues that *Rodriguez Diaz* applies because, even though detained pursuant to

subsection (c), petitioner was afforded the procedures available to subsection (a)

detainees—including all of those provided to the petitioner in *Rodriguez Diaz*. Dkt. 23 at

4–5.

1
2
3
4
5
6

*Rodriguez Diaz* should be applied in this case. The key distinction is whether the petitioner has previously received a bond hearing. Here, petitioner has received the procedures provided for in subsection (a) and its regulations, and *Rodriguez Diaz* therefore applies to determine whether due process requires a second bond hearing.[8] The Court therefore considers the *Mathews* factors, as they are explained in *Rodriguez Diaz*.

### a.    Private Interest

7
8
9
10
11
12
13

"As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees). Deducting the five months attributable to his criminal conviction, petitioner has been detained for a total of approximately 26 months—far longer than the 18-month detention the court in *Rodriguez Diaz* assumed would qualify as "prolonged."

14
15
16
17
18
19

The court in *Rodriguez Diaz*, while acknowledging that an 18-month detention weighed in petitioner's favor, cautioned that prior case law using a 6-month benchmark arose in a context in which no prior bond hearings had taken place. *Rodriguez Diaz*, 53 F.4th at 1207. The court further cautioned that "we cannot simply count [petitioner's] months of detention and leave it at that." *Id*. at 1208. Instead, the court must also

20
21
22
23
24

[8] This distinction is also evident in the handful of district court case that have cited *Rodriguez Diaz*. Two cases from districts within the Ninth Circuit continue to follow *Singh* to require bond hearings with the burden of proof upon the Government. *See Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357 MMA (JLB), 2023 WL 139801 (S.D. Cal. Jan. 9, 2023); *Doe v. Garland*, No. 3:22-cv-03759 JD, 2023 WL 1934509 (N.D. Cal. Jan. 10, 2023). But in both cases, the courts emphasized that the petitioners had experienced prolonged detentions without any prior bond hearings. *Sanchez-Rivera*, 2023 WL 139801 at *4 n.3 ("The Court highlights that the issue here is whether Petitioner is entitled to an *initial* bond hearing. The Court expresses no view as to whether due process requires a second or subsequent bond hearing."); *Doe*, 2023 WL 1934509 at *1 ("Doe seeks an individualized bond hearing before an immigration judge, which he has not been afforded during his detention.")

25

consider the process petitioner received during the time he was detained, the further process available to him, and "the fact that his detention was prolonged due to his decision to challenge his removal order." *Id*.

The first factor weighs in petitioner's favor, but in light of the process available to petitioner during his confinement and the contribution to the delays in adjudicating his underlying removal proceedings caused by petitioner's litigation choices, this factor should not be accorded overwhelming weight.

> **b.    Government's Interest**

The Government argues it has a strong interest in upholding subsection (c)'s statutory framework of mandatory detention for noncitizens whom Congress has deemed pose a flight risk or danger to the community based on their offenses. Dkt. 8 at 12–15. The Government also argues that it has a particularly strong interest because petitioner has been convicted of serious felonies—and has previously fled to avoid prosecution for his UK crimes. *Id*.; Dkt. 23 at 10. The Government further contends that its interest in detaining petitioner increases as his case proceeds. Dkt. 23 at 10 (citing *Rodriguez Diaz*, 53 F.4th at 1208 (the Government's "interests are of the highest order that only increase with the passage of time")).

The second factor weighs in the Government's favor. The Court agrees that the Government has a strong interest in detaining noncitizens who pose a danger to the community, and in ensuring the successful implementation of removal orders. As in *Rodriguez Diaz*, the Court finds these interests are significant. *Id.* at 1209.

###### c.    Risk of Erroneous Deprivation/Value of Additional Safeguards

*Rodriguez Diaz* held that the procedures provided under subsection (a) were sufficient to protect petitioner's liberty interests and mitigated the risk of erroneous deprivation. *Id*. at 1209–1210. Petitioner here received the same procedures.

First, upon petitioner's initial detention, an ICE officer made an individualized custody determination. Dkt. 9-6. Within two months of his detention, petitioner received an individualized bond hearing at which he was represented by counsel and submitted evidence. Dkt. 9-7; Dkt. 24-5. Petitioner received a written decision from the IJ denying his request for custody redetermination (Dkt. 9-9) and was afforded an appeal to the BIA (Dkt. 9-11), which also provided a written determination (Dkt. 9-12). Furthermore, petitioner was permitted to seek an additional bond hearing upon a showing of changed circumstances—and he brought such a motion. Dkt. 9-17. These are the same procedures that were afforded to the petitioner—and found to satisfy due process—in *Martinez Diaz*, 53 F.4th at 1209–1210, 1213. Moreover, the court determined that where, as here, a petitioner has had access to bond determination processes from the onset of his detention, due process does not require a shift of the burden of proof to the Government. *Id*., 53 F.4th at 1210–11.

The process received by petitioner is virtually identical to that which the court found sufficient to meet due process requirements in *Rodriguez Diaz*. The third factor therefore weighs in the Government's favor.

###### d.    Weighing the Factors

Two of the *Mathews* factors weigh in favor of the Government, and one factor weighs in petitioner's favor. On balance, the *Mathews* test supports a finding that

1  petitioner's detention does not violate his rights under the Due Process clause.

2  Petitioner's habeas petition should therefore be denied.

3                              **CONCLUSION**

4        Based on the foregoing discussion, the undersigned recommends that the

5  Government's motion to dismiss (Dkt. 8) be GRANTED and that petitioner's habeas

6  petition (Dkt. 4) be DENIED, and that this matter be DISMISSED with prejudice. A

7  proposed order and proposed judgment are attached.

8        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

9  have fourteen (14) days from service of this report to file written objections. *See also*

10 Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

11 purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

12 result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

13 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

14 omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

15 directed to set the matter for consideration on April 7, 2023, as noted in the caption.

16       Dated this 17th day of March, 2023.

17

18

19                              *Theresa L. Fricke*

20                              Theresa L. Fricke
                                United States Magistrate Judge

21

22

23

24

25

AMENDED REPORT AND RECOMMENDATION - 19