UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HARBANS SINGH,

                Petitioner,

  v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

                Respondent.

CASE NO. 2:22-cv-00548-BHS

ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Magistrate Judge Theresa L. Fricke's Report and Recommendation (R&R), Dkt. 28, recommending that the Court grant Respondent's motion to dismiss, Dkt. 8, deny Petitioner Harbans Singh's habeas petition, Dkt. 4, and dismiss this matter with prejudice. Singh objects to the R&R, Dkt. 31.

**I.   BACKGROUND**

Singh is a native and citizen of India who moved to the United Kingdom. Dkt. 10, ¶ 3. In 2014, Singh was arrested and charged in the United Kingdom with one count of sexual assault of a female and two counts of sexual assault of a female child under 13 years of age. *Id.* ¶ 3. Singh applied for and obtained a visitor visa permitting him to enter the United States but denied that he had been arrested in the United Kingdom. *Id.* ¶ 4.

In January 2015, Singh arrived in the United States. *Id.* In May 2015, Singh was convicted in the United Kingdom in absentia on his sexual assault charges. *Id.* ¶ 5. In July 2015, Singh applied for asylum, withholding of removal, and protection with the United States Citizenship and Immigration Services. *Id.* ¶ 6. In May 2019, the Citizenship and Immigration Services denied Singh's application and referred him for removal proceedings before the immigration court. *Id.* ¶ 8. In 2020, Singh was charged with fraud and making false statements on visa applications in this District and taken into criminal custody. Dkt. 9-5. Singh was released on bond and was subsequently detained by Immigration and Customs Enforcement (ICE). Dkt. 10, ¶ 12.

In September 2020, Singh requested and was granted a bond hearing before an immigration judge, who concluded that Singh's U.K. convictions constituted crimes involving moral turpitude within the meaning of 8 U.S.C. § 1226(c), requiring his mandatory detention. Dkt. 9-9. The immigration judge alternatively concluded that Singh failed to show that he was not a danger or flight risk and, accordingly, declined to release Singh on bond. *Id.* Singh appealed to the Board of Immigration Appeals, which affirmed the immigration judge's order. Dkt. 10, ¶ 15, 18. He then appealed the Board's decision to the Ninth Circuit and moved for a stay of removal. *Id.* ¶ 21. The Ninth Circuit has yet to rule on the motion or the appeal. *Id.* ¶ 23.

In July 2021, Singh was released from ICE custody and turned over to federal authorities for criminal prosecution. Dkt. 10, ¶ 17. Singh was convicted of federal crimes and sentenced to the five months he had served. *Id.* ¶ 19. In December 2021, Singh was returned to ICE custody, where he remains. *Id.* ¶ 20.

In February 2022, Singh requested a second bond hearing before the same immigration judge, alleging changed circumstances were presented by an intervening psychosexual examination and by Singh's status as a derivative family member on his wife's asylum application. Dkt. 9-17 at 7–8. The immigration judge denied his request, noting "[n]o material change in circumstances." Dkt. 9-18 at 2. Singh did not appeal this decision. Dkt. 10, ¶ 22.

This habeas petition followed. Singh's complaint contends that the statute under which he is detained—8 U.S.C. § 1226(c)—does not provide sufficient procedural due process protections. Dkt. 31 at 3–4. Singh argues that he should be granted a second bond hearing given his prolonged detention. Dkt. 4 at 14.

The Government argues that, under § 1226(c), Singh can be released only if necessary for witness protection purposes. Dkt. 8 at 10. The Government contends that, despite this, Singh has in fact received the bond hearings and procedures that are available to § 1226(a)[1] detainees. Dkt. 8 at 10, Dkt. 23 at 3–5. The Government moves to dismiss Singh's habeas petition. Dkt. 23 at 4–9.

Singh's surreply[2] asserts that, although Singh requested bond hearings, "these requests have, in substance, been rejected by the agency on the basis that 8 U.S.C. § 1226(c) precludes any of the agencies from jurisdiction over granting him release from

---

[1] Unlike §1226(c), § 1226(a) authorizes a noncitizen detainee to request a bond determination by an immigration judge. *See also* 8 C.F.R. § 236.1(d)(1).

[2] Singh's motion for leave to file a surreply, Dkt 34, is GRANTED.

ORDER - 3

1  deterntion." Dkt. 35 at 2. Singh contends he has requested due process but has not
2  received it. *Id.*

3  The R&R recommends that the Court conclude that Singh's detention is statutorily
4  authorized and, accordingly, deny his request for release from detention. Dkt. 28 at 11.
5  The R&R also recommends that the Court apply the three-factor *Mathews*[3] due process
6  test as explained in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), to analyze
7  whether Singh's detention comports with due process. Dkt. 28 at 14. Singh argues that
8  his detention violates due process because he was not afforded the procedural protections
9  granted to those detained pursuant to 8 U.S.C. § 1226(a) and that the *Mathews* due
10 process test demonstrates his detention is unconstitutional. *See* Dkt. 31 at 9-15.

**II.  DISCUSSION**

**A.  Legal Standard**

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2).

"[I]n providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to

---

[3] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

ORDER - 4

place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (internal quotation marks omitted). Accordingly, when a district court adopts a magistrate judge's recommendation, the district court is required to merely "indicate[] that it reviewed the record de novo, found no merit to . . . [the] objections, and summarily adopt[] the magistrate judge's analysis in [the] report and recommendation." *United States v. Ramos*, 65 F.4th 427, 2023 WL 2850376, at *6 (9th Cir. 2023).

**B.     Singh's Objection to the R&R's Recommendation to Apply *Rodriguez Diaz v. Garland***

Singh objects to the R&R's recommendation that the Court apply the holding in *Rodriguez Diaz*, 53 F.4th 1189, to this case. Dkt. 31 at 5-6. *Rodriguez Diaz* held that noncitizens who are detained under 8 U.S.C. §§ 1226(a)–(c) pending their removal are not automatically entitled to a second bond hearing when their detention becomes prolonged. *See* 53 F.4th at 1212. The *Rodriguez Diaz* court and others in this District have applied *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether the procedures provided to noncitizen detainees who have been afforded initial bond hearings are constitutionally sufficient when their detention has become prolonged. *See, e.g.*, *Viramontes-Gomez v. Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018). For noncitizens detained under § 1226 who were not given an initial bond hearing, however, *Mathews* does not sufficiently test whether their due process rights

ORDER - 5

were violated, and courts in this District instead apply a different multifactor test outlined in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106–07 (W.D. Wash. 2019).[4]

For § 1226(a) detainees, the Attorney General can either "continue to detain the arrested alien" or "may release the alien on (A) bond of at least $1,500 . . . or (B) conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Section 1226(c), on the other hand, carves out a class of noncitizens for whom detention is mandatory. 8 U.S.C. § 1226(c). This includes individuals who have committed certain enumerated offenses, such as crimes of moral turpitude. *Id.* § 1226(c)(1); *See also* 8 U.S.C. § 1227(a)(2)(A)(i). The Attorney General may release a person detained pursuant to § 1226(c) only if necessary[5] for witness protection purposes. 8 U.S.C. § 1226(c)(2).

Sections 1226(a) and 1226(c) also differ as to the procedural protections afforded once a noncitizen is already detained. A section 1226(a) detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19. If, at this hearing, the Government fails to demonstrate by clear and convincing evidence that the detainee poses a danger to the community or by a preponderance of the evidence that the detainee poses a flight risk, the

---

[4] *Banda* considered the following factors to determine whether a noncitizen's immigration detention violated due process: the total length of detention to date; the likely duration of future detention; the conditions of detention; delays in the removal proceedings caused by the detainee; delays in the removal proceedings cause by the government; and the likelihood that the removal proceedings will result in a final order of removal. 385 F. Supp. 3d 1099, 1106–07 (W.D. Wash. 2019).

[5] *Demore* recognized that courts may need to require individualized determinations as to the flight risk or dangerousness of 1226(c) detainees, if continued detention becomes "unreasonable or unjustified." *Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring). Singh's extended immigration detention is a consequence of his appeal of his removal order—it is not unreasonable or unjustified, and it is not itself a "punishment." *See* Dkt. 31 at 14.

immigration judge must order the detainee's release. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).[6]

An individual detained pursuant to § 1226(a) may also request an additional bond hearing whenever he or she experiences a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). By contrast, § 1226(c) on its face offers no opportunity for release on bond. *See* 8 U.S.C. § 1226(c).

Singh argues that the section 1226(a) habeas petitioner in *Rodriguez Diaz* was afforded process that was unavailable to Singh as a detainee under 1226(c), and that *Rodriguez Diaz* is not applicable in this case. Dkt. 31 at 7. Singh also argues that he was not given the opportunity to provide the immigration judge with new evidence of changed circumstances that would entitle him to a second bond hearing. *Id.* at 8.

Singh conflates section 1226(c) with 1226(a). The petitioner in *Rodriguez Diaz* was detained under 1226(a). 53 F.4th at 1193. Individuals detained under 1226(c) are not entitled to the procedures Singh is requesting. *See Rodriguez Diaz*, 53 F.4th at 1201. And, in any event, Singh already received those procedures.

Upon Singh's initial detention, an ICE officer made an individualized custody determination. Dkt. 9-6. Within two months of his detention, Singh received an individualized bond hearing at which he was represented by counsel and submitted

---

[6] The Court recognizes that the immigration judge during Singh's 2020 bond hearing explained, in the alternative, that Singh "has failed to show that he is not a danger or a flight risk." Dkt. 9-9 at 4–5. This is of no consequence. This ruling was made in the alternative and the primary basis for the immigration judge's decision was that Singh was subject to mandatory detention. *Id.* at 4. Additionally, the fact that Singh fled the United Kingdom to evade prosecution shows that he is a flight risk.

ORDER - 7

evidence. Dkt. 9-7; Dkt. 24-5. Singh received a written decision from the immigration judge denying his request for custody redetermination, Dkt. 9-9, and was afforded an appeal to the BIA (Dkt. 9-11), which also provided a written determination, Dkt. 9-12. Singh was also permitted to seek an additional bond hearing upon a showing of changed circumstances—and he brought such a motion. Dkt. 9-17. These are the same procedures that were afforded to the petitioner—and found to satisfy due process—in *Rodriguez Diaz*, 53 F.4th at 1209–1210, 1213. Accordingly, the Court adopts the R&R's recommendation to apply *Rodriguez Diaz* to this case.

**C.     Singh's Objection to the R&R's Application of the *Mathews v. Eldridge* Due Process Factors**

Singh objects to the R&R's recommendation that the Court find that the *Mathews* test weighs in favor of the Government. Dkt. 31 at 9. *Mathews* held that an evidentiary hearing is not required prior to termination of disability benefits, and that the present administrative procedures for such termination fully comport with due process. *See Mathews v. Eldridge*, 424 U.S. 319, 339 (1976). The court balanced the following three factors to determine when an individual's due process rights are violated: 1) the private interest involved, 2) the Government's interest, and 3) the risk of erroneous deprivation and the value of additional safeguards. *Id.* at 335.

First, Singh argues that, although the R&R correctly finds Singh has a strong interest in being released from immigration detention, it improperly understates the weight of the factor. Dkt. 31 at 13. Singh contends that this factor should be weighed

heavily in his favor because his detention has become excessively prolonged. Dkt. 31 at 2.

The R&R correctly recommends that the first *Mathews* factor should not be accorded overwhelming weight in Singh's favor, given the process that was afforded Singh during his confinement and the Ninth Circuit's holding that detention of a noncitizen pending removal may be deemed unconstitutionally prolonged only when detainees have not been afforded bond hearings.[7] Singh has been afforded a bond hearing before an immigration judge. Dkt. 9-9.

Second, Singh objects to the R&R's finding that the Government has a strong interest in keeping him detained pending his removal. Dkt. 31 at 14. Singh contends that the Government has no legitimate interest in detaining individuals who pose no flight risk or danger to the community, implying that he does not pose either. *Id.* But Singh is a flight risk—he fled the United Kingdom while facing criminal charges there. Dkt. 4 at 3. Singh's convictions are also serious and demonstrate that he is a danger to the community.

Third, Singh objects to the R&R's finding that the risk of erroneous deprivation of his liberty interest is low. Dkt. 31 at 15. Singh argues that the R&R fails to address the risk of him being detained in error and the value of safeguarding due process rights for

---

[7] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) ("With the possible exception of our now-overruled decision in *Rodriguez III*, 804 F.3d at 1084–85, when we have previously referred to detentions longer than six months as 'prolonged,' we have done so in the context of detentions for which no individualized bond hearings had taken place at all").

ORDER - 9

those detained under § 1226(c). *Id.* at 15-16. Singh also argues the R&R falsely states he received an ICE custody determination. *Id.*

Contrary to his objection, Singh has been afforded an individualized ICE custody determination. Dkt. 9-6. The R&R correctly concludes that the procedures Singh was afforded from the onset of his detention were sufficient to meet due process requirements.

The Court has reviewed de novo the issues pertaining to Singh's objections and concludes that his objections lack merit. Having considered the R&R, Petitioner's objections, and the remaining record, the Court hereby finds and orders as follows:

(1) The R&R is **ADOPTED**;

(2) Singh's objections are **OVERRULED**;

(3) Singh's habeas corpus petition, Dkt. 4, is **DENIED** and this matter is **DISMISSED with prejudice**;

(4) The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED.**

Dated this 19th day of July, 2023.

BENJAMIN H. SETTLE
United States District Judge